**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRACY YANCEY,

    *Plaintiff*,                          CASE NO. 13-CV-11162

v.                                     DISTRICT JUDGE GERSHWIN A. DRAIN
                                         MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff Tracy Yancey was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 39.) Plaintiff has no employment history. Plaintiff filed the instant claim on August 24, 2010, alleging that she became unable to work on August 3, 2010. (Tr. at 111.) The claims were denied at the initial administrative stage. (Tr. at 70.) In denying Plaintiff's claims, the Commissioner considered asthma and affective disorders as possible bases for disability. (*Id.*) On July 26, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Dennis Matulewicz, who considered the application for benefits *de novo*. (Tr. at 13-27, 33-62.) In a decision dated August 10, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on September 26, 2011. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 16, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On March 15, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.  Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137,

142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

3

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 24, 2010, the application date. (Tr. at 18.) At step two, the ALJ found that Plaintiff's obesity, asthma, history of cocaine and alcohol abuse in early remission, major depression, marijuana abuse, nicotine addiction, and hypertension were "severe" within the meaning of the second sequential

6

step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-20.) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. at 22.) The ALJ also found that Plaintiff was 46 years old on the date the application was filed and thus met the classification of a "younger" individual, which is defined as ages 18 through 49. (Tr. at 23.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 20-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

      **E.**     **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment in the emergency room of Botsford Hospital in Farmington Hills, Michigan, in 2010 and 2011 because of difficulty breathing, bronchitis, an asthma attack, and flank pain. (Tr. at 189-238, 250-80.)

Plaintiff underwent a consultative examination with Terrance A. Mills, Ph.D., on October 8, 2010. (Tr. at 239-41.) Dr. Mills noted that Plaintiff's "[p]osture and gait were normal" and that her "speech was spontaneous, logical and organized." (Tr. at 239-40.) Dr. Mills also noted that Plaintiff's "affect is normal[,]" but that her "mood is depressed. She gets angry especially when she feels frustrated. When she is angry she slams things or throws stuff. She cusses people out when she is angry." (Tr. at 240.) Dr. Mills diagnosed depressive disorder, NOS, cocaine dependence in early remission, alcohol dependence in remission, marijuana abuse, and possible ADD/HD, and assessed a GAF score of 50 to 55. (Tr. at 241.)

Plaintiff also underwent a consultative examination with Amer Ashad, M.D., on October 8, 2010. (Tr. at 243-45.) Dr. Ashad noted that Plaintiff had "5/5 power in all four limbs[,]" that her "[g]ait is normal[,]" her "[m]uscle bulk and tone are normal in the upper and lower extremities

7

bilaterally[,]" that Plaintiff "is able to walk on heels and toes" but "cannot squat down" and that her "[h]and grip is 70 lbs bilaterally." (Tr. at 244.) Dr. Ashad diagnosed asthma, depression, hypertension, and heavy tobacco use. (Tr. at 245.)

On February 9, 2011, Plaintiff complained of flank pain; a CT scan of her abdomen was normal. (Tr. at 262-63.) X-rays of Plaintiff's abdomen were also normal. (Tr. at 268.)

A Medical Source Statement was completed on July 7, 2011, by Dr. Watts. (Tr. at 281-85.) Dr. Watts indicated that he saw Plaintiff on a monthly basis for medication reviews for depression. (Tr. at 281.) Dr. Watts noted that Plaintiff "does better with meds and therapy[,]" that her prognosis is "fair[,]" but that Plaintiff is seriously limited in all categories and that Plaintiff is disabled. (Tr. at 282-83.)

At the administrative hearing, Plaintiff testified that she lives in a house with a friend of hers who is not in good health and that Plaintiff goes shopping for her friend and washes her dishes. (Tr. at 40.) When asked whether anything happened on the alleged onset date to cause Plaintiff to file for benefits, Plaintiff responded, "my youngest son . . . was accused of first degree murder" and, after his trial, he was sentenced in 2010 to "life" in prison. (Tr. at 41.) Plaintiff stated that she is worse now and does not like to be around people other than her mother and her adult sons. (Tr. at 42.) Plaintiff testified that she cooks and does laundry at her mom's home and to do that, she "walk[s] down the stairs." (Tr. at 42-43.) Plaintiff stated that she was arrested for possession of crack cocaine and marijuana in 2008 and was sentenced to three months' incarceration and eighteen months in a rehabilitation center. (Tr. at 43-44.) Plaintiff testified that she used to smoke crack about four times a month but has not smoked crack since February, i.e., five months before the hearing. (Tr. at 44.) Plaintiff still smokes cigarettes but only "like three cigarettes a day, and that's good from a pack a day." (Tr. at 46.) Plaintiff also stated that "it's been

maybe about a month since I had a little drink," which she clarified was a "double shot" of "Seagram's apple vodka." (*Id.*) Plaintiff testified that she had not smoked marijuana since January, i.e., six months before the hearing. (Tr. at 46-47.)

Plaintiff indicated that her psychiatric medication "is helping" and that she is sleeping a "little better" with the medication. (Tr. at 47.) Plaintiff stated that she can lift a gallon of milk, can clean "her area" and can walk "'bout 12 minutes to Walgreen's." (Tr. at 48.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who

> could lift 20 pounds maximum, 10 pounds frequently, 20 pounds occasionally, sit six hours of an eight hour shift, can stand and or walk six hours of an eight hour shift, should never use ladders, scaffolds, or ropes. Avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, fumes, odors, gases, and respiratory irritants. Avoid all concentrated exposure to hazards, including dangerous and unprotected machinery or heights. Only carry work that would carry out simple, and unskilled work with an SVP rating of 1 or 2. Work that would have minimal personal interaction contact or discussion with coworkers. Work requiring only brief or superficial contact with the general public. Work that would not require teamwork or working in close proximity of coworkers and routine work that would not require changes or adaptations in the work settings or duties more than once a month.

(Tr. at 57-58.) There was no past work, but when the ALJ asked the VE to restrict the jobs to ones at the sedentary exertional level, the VE opined that such a person could perform the 1,200 machine feeder jobs and the 3,000 general office clerk jobs available in the State of Michigan. (Tr. at 59.) When asked by the ALJ, the VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles, except that the machine feeder job is classified as light work but that the job is also performed in Michigan at the sedentary level and that the numbers given reflected the reduced number of jobs at the sedentary level. (Tr. at 59-60.)

    **F.**    **Analysis and Conclusions**

    **1.**    **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 20-22.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that she suffers from major depressive disorder and borderline personality disorder, back pain, leg pain, that she uses a cane and that she is in constant pain. (Doc. 12.) Nonetheless, I suggest that the ALJ's findings are supported by substantial evidence. Although Plaintiff has asthma, there is no evidence that it is disabling. Although Plaintiff has complained of flank pain, CT scans and x-rays of Plaintiff's abdomen based on these complaints

were normal. (Tr. at 262-63, 268.) Although Plaintiff indicated that she uses a cane, Plaintiff's gait was consistently noted to be normal. (Tr. at 239-40, 244.) In addition, Dr. Ashad found that Plaintiff has "5/5 power in all four limbs[,]" her "[g]ait is normal[,]" her "[m]uscle bulk and tone are normal in the upper and lower extremities bilaterally[,]" and she "is able to walk on heels and toes[.]" (Tr. at 244.) Finally, there is no evidence that her depression was disabling. Instead, even Dr. Watts noted that Plaintiff "does better with meds and therapy" and that her prognosis was "fair[.]"[2]

I also note that Plaintiff was treated with prescription medications only and was never hospitalized for mental or physical impairments. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the consultative examinations (Tr. at 239-45) and was in harmony with the objective record medical evidence and Plaintiff's own testimony that she can cook, do laundry, walk down the stairs, lift a gallon of milk, clean "her area," and walk about "12 minutes to Walgreen's." (Tr. at 42-48.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

---

[2] I note that Dr. Watts's opinion that Plaintiff was disabled (Tr. at 282-83) is not entitled to any deference since it regards a decision left to the Commissioner. 20 C.F.R. § 404.1527(d)(3). I also note that Dr. Watts's opinion that Plaintiff is seriously limited in all categories was properly discounted by the ALJ since it was expressed on a conclusory form on which Dr. Watts drew a line down all categories and which contained no citations to results of tests, observations, or other medical findings. Under these circumstances, I suggest that the ALJ was free to discount this opinion and committed no error in doing so. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ <b>Charles E Binder</b><br>
CHARLES E. BINDER

Dated: January 30, 2014                United States Magistrate Judge

**CERTIFICATION**

  I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 30, 2014       By  s/Patricia T. Morris
                   Law Clerk to Magistrate Judge Binder